Good morning, your honors. May it please the court, Devin Burstein on behalf of both defendants for purposes of this argument. Your honors, the defendant's convictions under section 666 cannot stand because the VRE payments to the Wounded Marine Career Foundation were not benefits for purposes of the statute. But there was more in this case. It wasn't just the payment of benefits that occurred here. It seemed to me that the government almost co-managed them while they were getting started and, you know, gave them special advice and they were coddled in a way that is beyond just sending a check. Does that make any difference? It does not, your honor. First of all, the benefits question is decided as a matter of based on what the evidence was here as to what constitutes a benefit and then whether they got it. Right. And what I meant, your honor, is it would be it would be an odd circumstance for VRE payments to an institution to be benefits in one particular case because they were a startup, but a more established institution like a Stanford or a Brooklyn college, they wouldn't be. But that's but that's assuming that only the payment is the benefit. That's my my point. Now, benefit means hands on help, for example, then in Stanford's case, they won't get a benefit. And maybe in this case they will. But it doesn't mean hands on help. I mean, within the context of the case law, within the context of the statute, it's clearly a financial benefit. So, for example, in the Fisher case, we have the Supreme Court talking about Medicaid payments. The costs include payments that will benefit the community at large. It's not just quid pro quo payments. In really all of the cases, for example, the Virgin Islands case at the government sites, it's a grant to the Virgin Islands. It's a benefit that's largesse. It allows them to fund their government. Or in the case of the AIDS benefit to Puerto Rico. Again, these are not quid pro quo financial services. It's not a benefit in the sense of we're going to maybe help you by giving you some advice as to how you fund. I mean, how you start up your. Well, let's start with the assumption that the property taken need not be need not be the benefit given. Correct. You agree with that? A hundred percent. The Supreme Court is the side that benefits an weren't the government and therefore be liable under the statute. And right. And because of that, there is a danger in 666 being interpreted in a particularly broad way because it doesn't have to be traced. But yes, taking your honor's point, that is correct. What about the government provide education and therefore have the have the students have the area of benefit very benefits? Is that accreditation of benefit? No, it's not a benefit, your honor. Why not? Because that is any time the government. Let's take a step back. We know taking from the first principle that not all government funds are benefits. We know that just because the government gives me money to go spend at a school, that's not a benefit. Right. The school. So my question is, following up on Judge Graber's, they sped, they sped up the accreditation of this group because they liked what they were doing. They may, you know, they they worked with them together to make sure they would be eligible. Does that does that bundle of things add up to a benefit? No, your honor, because the statute and all the case law confirms it's focused on a financial benefit. And it's not that we didn't your clients financially benefit or the organization from its eligibility to receive educate people with federal funds. Your honor, the reason I was going back to the first principle is because that is true. Any time the government enters into a contract, Lockheed Martin, by the fact that they are deemed eligible to build a joint strike fighter benefits tremendously. Lockheed Martin could not exist but for the defense contracts. Not clear on the record to me. After all, Lockheed Martin and Boeing build, build commercial airliners. One of the problems with this case, in my view, is that your client's business exists solely to provide services to veterans. Correct. And would not be viable without these. Without just in the absence of accreditation by the Department of Veterans Affairs and their cooperation that went, your clients would not be in business. There's there aren't any. There aren't any veterans with their own dollars on the street seeking this service. Portion, a significant portion of the budget wound up, or the funding wound up coming. I think in the first class it was eight of 25 students received VRE benefits. But let's look at what the VRE counselor actually said. She is the director, Ruth Fanning, of the VRE program for the VA. She says, quote, the VRE program, it doesn't fund schools. We don't provide grants. We don't provide payroll. We provide payment for participation of a specific veteran or transitioning service member to attend a program in accordance with its course catalog. VRE works the same in terms of the financial benefit to the service member vis-a-vis any institution, whether the veteran wants to learn to be a truck driver, wants to go to a four-year college, wants to go and get a teaching degree. They pay the commercial rate charged by that institution hands down across the board. Yes, that institution needs to qualify, but any government contractor needs to qualify. We can posit, we don't check our experiences at the door, that whatever the janitorial services for the Ninth Circuit go through a government contracting process. Everything does. It's our taxpayer funds, but that doesn't, funds, commercial funds are not synonymous with benefits. If they were, the statute would have said funds. So could you distinguish Fisher for me? Oh, absolutely, Your Honor. So it really goes to, and just to... So Fisher, we're dealing with Medicare payers. Let me quote Fisher. So allowable costs include amounts which enhance the organization's capacity to provide ongoing quality service, not only to eligible patients, but also to the community at large. So you just told me that only 8 of 25 of the eligible people in your client's program. The first year. Yeah, first year. So it's a program that provides benefits to the community at large. The tuition paid, the payments that these guys make are used to build up the infrastructure of your place. Why is it different than Fisher? That's not what Fisher was saying, Your Honor, respectfully. Fisher is saying the allowable costs. In other words, Medicaid, they pay for not just reimbursement, right? For example, in Medicaid, they're allowed to write off portions of medical equipment that they'll pay for things like programs for hospitals to put on for the general community. It's not every cent. Would it be different if your client's billed separately for, and they said, your tuition is $1,000 or $500. There's a $300 equipment fee. Is it different because they bundled that all into the tuition? No, Your Honor. The point of Fisher is that Medicaid payments go beyond the commercial... Aaron Fisher. Sorry, I think it was Medicaid payments. I thought it was Medicare. It was Medicare. Medicare, sorry. Adequate payments and assistance to the healthcare provider is itself one of the objectives of the program. That's a quote from Fisher. That's what really what the Supreme Court focuses on. So go back to Judge Graber's question. Given, and I think the government overstates the nature of partnership in their briefs, but given the cooperation that the VA entered into with your client's business, why isn't this sort of equivalent to Fisher? Let's look at what Ms. Fanning says. The partnership, if you will, is not the correct terminology. A facility would be considered a vendor by the VA. The key in Fisher, Your Honor, and I think I'm doing a poor job of explaining it. Oh, no, you're doing a good job. It is that Medicaid or Medicare payments, the amount of money is not limited to reimbursements. They pay hospitals for more than services rendered. They pay them in order to benefit the community at large. There is a delta. So let's just say that the actual fee for service is $10. Well, Medicare or Medicaid allows $12 because they want the service of the hospital to benefit the community at large. It's that delta. We see it in the case law as Where in Fisher do you see that as a requirement? It appeared to me that there was a great deal of discussion in the case about Congress's intent to make this a very far-reaching and broad statute, and they talk about looking at the purpose and the structure and the nature of the operations, but I didn't see anywhere where there was a requirement that there be extra money that isn't reimbursement or isn't given to an individual for health care or training for jobs or whatever. Am I missing something? I mean, that may be correct, but I didn't see where that was a requirement on the part of the court. Well, I think that has to be the nature of the distinction between a commercial transaction. I mean, that's what most of the analysis focuses on is, look, a Medicare or Medicaid is a benefit to the hospital because it's not limited. Again, they say the payment But that happens to be how they analyzed it in that case, but the question here is whether the program's purpose is one of public benefit, and it seems to me that it is primarily to benefit individual veterans but has a greater social benefit by getting people off welfare and getting them productive in the community, which is a public benefit. But not to the institution because, again, it's the financial monies to the institution. They are not paying. There is no delta. There is nothing beyond But that's why I asked the question before. Every institution of education that I know of that has a single charge uses some of its money to educate the students, some of its money to build the building, some of the money to do outreach, etc. So if the tuition here had been broken up into those portions, would we have a different result? You would because VRE wouldn't pay it. That's what VRE says. We only pay tuition funds for services given to veterans. So if the Wounded Marine Corps said, look, you know what, the tuition is $10. We want $12 because we want to do community outreach. VRE, by its Is it illegal if you only get the $10 to use $2 for community outreach? Would it be illegal? No, but it wouldn't be... So in the real world, what the tuition does is build the institution, does it not? But that is true of every... I mean, the same is true of Northrop or any government contract. The point is it's not government funds. Yes, any time you pay with our tax dollars, not you, Your Honor, but our government pays a contractor, that is a benefit in a larger sense to that contractor. And that's what Fisher says. Look, government funds in some contexts are always benefits. They are benefiting the person, but what we need is something other than a commercial transaction, other than fees for services rendered. We need something like a grant, something like a subsidy, something that's showing, hey, we are not just benefiting our service member, we are going out for our purpose to benefit your institution. And the testimony... To benefit their institution or to benefit the community? To benefit the community at large via the institution, not just fees for services rendered. I have one separate question on this issue, and that is, to what extent does it matter that this issue was not preserved below in a Rule 29 motion, where your basic theory below was that the evidence was insufficient on the state of mind? But I don't believe you raised this benefits question. That's correct. So does that make any difference? No, it doesn't. And last night I was reviewing Your Honor's concurrence in ZHU, because I thought this might come up. It doesn't, because this is clearly the jurisdictional provision, and even as Your Honor noted in ZHU, that is one clearly recognized exception to the Plain Error Rule, that when it's a legal matter as to the jurisdictional component of a criminal statute, de novo review remains. But it's a sufficiency of the evidence question here. The question is whether the government can establish the jurisdictional element. They did on this record establish the jurisdictional element. I mean, I understand the nuance of it, but I would say two things then. If it doesn't fall within the jurisdictional exception, and we think it does, then there are two reasons why it would still remain de novo review. The first one is, again, as Your Honor noted in ZHU, this Court at some point will have to take up en banc whether or not the pure question of law is good law. Your Honor noted it's not in other circuits. It is currently the law of this circuit. That's why Your Honor concurred, I assume, rather than dissented in ZHU. So if that's the deciding factor, then the law as it stands now is that it would be de novo review. That's answer one until the en banc panel concludes the other words. Answer two is I don't think it's fair to characterize this, the Rule 29, as doing anything other than preserving it. And if I could just answer, I know I'm over. But the reason why is because the district court says, basically, do me a favor. We're going to presume that the Rule 29 is deemed properly made at the close of the government's case. Nobody objects. By a Rule 29, a general Rule 29, all counts, all elements, you preserve the sufficiency of the jurisdictional challenge. So for those three reasons, the jurisdictional exception, the pure question of law exception, and the Rule 29 as set up in this particular case by the district court, it's de novo review. Thank you. We used up a lot of your time, so you can have a minute for rebuttal when the time comes. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, Helen Hong on behalf of the United States. The district court did not plainly err by denying the Rule 29 challenge on the forfeited claim that the benefits received by the WMCF were benefits within the meaning of the statute. As Your Honor recognized, WMCF in this case was uniquely situated. As the witnesses described, WMCF received special treatment. It was unique. There was one vendor per year. Why is that a benefit within the statute? Everybody who wants to provide this service is entitled to accreditation if they meet the standards. And the people at the agency looked at this one and said, let's speed walk this one through the process. We like what they're doing. They didn't give them any extra money. They didn't send anybody out to help them. There weren't any grants. They just didn't they processed their application faster than it would have been otherwise. Correct? No, then that wasn't the only benefit that WMCF received. First, there was evidence that WMCF received overpayments. So Cecilia Lomas testified, for example, at ER 468 that the VA determined that for each of the eight inaugural classmates that there was an overpayment at a minimum of $6,000. There was a notice sent that there was an overpayment of approximately $20,000 in the invoices, but at a minimum that there was a $6,000 overpayment for each of the eight students. That's a $48,000 benefit that WMCF received. And did the VA seek to recoup that $6,000? No. So the VA intended for them to keep it? What Ms. Lomas testified was that they specifically did not seek overpayments from WMCF because of concerns that WMCF would have to shutter its doors if they asked for that money back. So they, in effect, illegally gave them a benefit? The VA provided a benefit given the unique treatment and training program. The program doesn't allow them to do that, does it? Well, the VA in this case did. The testimony was that the WMCF received special treatment. I guess I'm asking a different question. If your colleague's characterization of the program is correct, all they can pay for is tuition, correct? That's correct, but we know in this case that wasn't the case. Okay, so is it a government benefit if the VA gives you money it's not supposed to? Well, I should say, well, there's two answers to that. One, if you look at Viscount, for example, the Second Circuit case from 1997, there an organization received funds it wasn't supposed to receive at all because the veteran was no longer at the home. But that theft of funds, that misappropriation of funds, was nonetheless considered the benefit that brought the organization within the statute. The same can be said here. We also have evidence that WMCF, at the time of recertification, changed its tuition from $88,500 for a 10-week course to $64,000 for a 14-week course. There was no explanation of why the tuition had diminished, but that $24,000 reduction in price alone could support the jury's verdict that WMCF, in its inaugural course, received a $24,000 benefit for each of the students that had enrolled because of the overpayment that had been sought. So let's go back for a second. Let's assume there were no overpayments and all that the agency did was help them set up this organization because they thought they were going to be a good vendor. Would there be benefits then under that circumstance? I think even without the overpayments in this case, there is evidence that WMCF received benefits. What's that evidence? If you look at the language of Fisher, the point of Fisher was, are the providers being propped up by the program so that they can provide ongoing services to the individuals that the government deems worthy? In this case, WMCF was propped up by the VA in order to provide specific training for veterans and a cohort of their peers for the worthwhile purpose of ensuring their training and rehabilitation. The WMCF's entire viability, as Your Honor recognized at the beginning of this argument, depended on VA funds. That's true of every sort of technical college or educational institute out there today, the hairdressing institutes, the institutes that teach people to be cooks, whatever. They all depend on government funds. And if they depend on government funds, they may fall within the scope of 666B, Your Honor. The point here is that the WMCF specifically was propped up by the VA because of the specific training it provided to wounded veterans returning from battle. And because of WMCF's specific purpose, the VA ensured that it wouldn't shutter its doors. And so there's much testimony both in the documents as well as at trial that the VA treated the WMCF specially. They provided retroactive benefits and approval for veterans who had accepted the program as a gift. That could not ordinarily happen. But what the VA did for WMCF because of the special training it provided was provide that retroactive, accelerated approval for the eight inaugural veterans enrolled in the program. It also held the WMCF's hand in selecting students who were appropriate for this training program. The testimony from Ruth Fanning was initially that that's not something that the VA ordinarily does. If a veteran comes to them as part of the rehab program and says, I'd like to go to Stanford or Berkeley or San Diego State, there is no coordination with those universities. Your colleague says the benefit must be financial, not simply intangible. I'm helping you. I like you. I'll direct people to you. Is that a requirement of the statute or not? Well, the statute requires a benefit in excess of $10,000, so it's monetized. So how do you monetize we're going to be nice to you? In this case, it's not just we're going to be nice to you. It's the financial viability of the organization. The $708,000 it received in 2008 of its $1.2 million budget, that's a financial benefit it received because of retroactive accelerated payments that the VA provided because it wanted to insure it. Here's where I'm having some difficulties. I need you to help me. You agree with me that in the ordinary situation where the government just says to a veteran, here's $10,000 to use at an eligible institution, and the veteran goes to the eligible institution and the government then pays his tuition, that's not a benefit to the institution. Do you agree with that? That would be a much harder question. Yes, Your Honor. So why is this different just because the government was more liberal in giving tuition to the people who went there? Because of the instructions that the Supreme Court provided in Fisher. In Fisher, the Supreme Court said that the hallmarks of an organization that receives benefits are organizations that are essentially propped up by the federal program. So if the recipient's own operations are one of the reasons for maintaining the program, then that recipient is a recipient of a benefit within the meaning of the statute. That is precisely what happened with WMCF. The regional office of the VA here in San Diego saw the WMCF as a unique training opportunity. The transcript is replete with references to it as being unique and special. And in that sense, it's similar to the special treatment programs that Fisher identified in the Medicare program for small rural hospitals, for example, or hospitals that primarily treat low-income patients. Those hospitals receive special treatment because they're propped up in order to help. But those hospitals received more in the level of funds than they would have otherwise. In this case, each veteran still got only the same tuition funding that he would have gotten even if this wasn't a special place, right? Well, there was certainly evidence that the WMCF received far more than its tuition would demand. For example, they claimed that the students were taking home tens of thousands of dollars worth of equipment. That didn't happen, right? So in this case, those funds, as Your Honor noted, did go to the ongoing viability and operation of the WMCF. It was not simply salary for instructors that went out. It was $88,500 per student for a 10-week course. As one of the board members and instructors noted in a letter that was submitted as one of the exhibits, that was an exorbitant price that didn't meet or match what the training was in that 10-week program. And we know that the WMCF recognized that because they reduced their tuition by $20,000 per student the very next term. I'm going to understand this argument. Let's assume they charged exorbitant tuition, and it was much more than justified. But nonetheless, the way the tuition got to them was it came at an eligible veteran enrolled, and therefore his tuition was paid. Under those circumstances, you think they've gotten the government benefit that they wouldn't have, but had the tuition only been reasonable, it would not have been a government benefit? Part of the reason that WMCF received the $88,500 was because of the accelerated approval process. That was part of the testimony from the VA witnesses. So the VA didn't check as carefully as they might have with respect to the amount of tuition? That's what the documentary evidence and testimony establishes. And, in fact, that's really what the defendants were trying to establish at trial, is that the VA rushed through a process,  was for the WMCF's benefit. It was because at ER 530, for example, Cecilia Lomas was asked, did Judith Pyschow ask you to move, move, move on the invoices? And how did that impact your work? And her testimony was that they would have to close their doors because they were contingent on VA paying those invoices. That caused concern because we want to make sure that they would be able to complete their programs, so we went and assisted WMCF in paying those invoices. In other words, what the VA did was prop up the WMCF so that the veterans who had already attributed their voc rehab funds would get the benefit of their training and the WMCF wouldn't shutter its doors. What Fisher said was that one of the answers to whether an organization receives benefits could be whether their own businesses are propped up, and that's what happened here with the WMCF. I would just note that the exceptions contained for non-benefits are truly for commercial, ordinary course-of-business transactions. The government in this case got nothing. The government didn't walk away from the transaction with an airplane. It didn't walk away from the transaction with supplies. That's why I asked the question before. So is our Pell Grants other government aid to students that universities take? Are they benefiting under the statute? I don't know the intricacies of the Pell Grant. Well, let's assume that it's just it goes to the student. The student qualifies and then can go to an institution of higher learning and use his money. So under those circumstances, put aside whether it's stolen later, has the university benefited under the statute? If the university's viability and ongoing concern is dependent on those loans and grants, and if the university's is held, their hand is held throughout that entire loan approval process, if there is retroactive approval. No, no, you're making it this case. I'm trying to find out how far your argument goes. Let's assume all that happened is somebody applies to the government, gets a grant to be used for education, and then goes to an institution and spends it for education. Under those circumstances, the government's not engaging in consumer transaction there. It's the benefited individual. Is that enough to qualify under the statute? Perhaps, but we don't need to extend that far because of the specific facts of this case. I guess I would leave this with this example. The example that my colleague had posited was the food stamps example. Are all grocery stores ensnared within 666 simply because they receive food stamps from recipients who are purchasing groceries? If the grocery store is like the WMCF that serves only individuals who use food stamps, and the organization, the USDA, props up that grocery store because it serves a specific population that they would like to ensure receives healthy food, the answer there is yes, they are the recipient of benefits. And what's the answer if it's Vons? If it's Vons, then there may be other reasons. For example, the university's example, I suspect that almost every large university is going to be the recipient of federal funds within the meaning of 666, so it's not the Voc Rehab program that's doing the work of ensnaring those funds into the scope of the statute. But whether Voc Rehab funds alone for one student at Stanford University would constitute benefits or not, it's just not relevant to this case because this case, as we said from the beginning, WMCF is unique. And what the WMCF provided, specific tailored training for veterans who were wounded and the way that the VA cooperated with them in the context of their relationship, the WMCF received benefits. On the plain error question, I think it does make a difference to the extent that this is even debatable at all. To the extent it's debatable, it shows that the errors... How is it different, though, because if we're looking at the sufficiency of the evidence, which is the way this argument was framed, I'm not sure what would be different under plain error review and regular sufficiency of the evidence review. There still has to be sufficient evidence to enable a jury to convict beyond a reasonable doubt in a rational way. So what in the real world would be different? I think the real world difference is that under prong 2, what you have to show for plain error is that it's clear, clear-cut and plain. And again, to the extent that this is debatable about whether the evidence here about the WMCF specifically was sufficient, then the appellants have not met their burden to show under plain error review that the evidence was insufficient. But even without that, I think we prevail under de novo review, given the evidence in the state. Your adversary's argument that the judge said the Rule 29 motion will be demade, that strikes me as if there was no argument. And I should note that those... Why did he do that? It was just a way of moving the trial along without having to send a jury out and say, make your motion. Yes, and that's a mischaracterization of what the district court did. It was the defendant's request, and that's at ER 1708, ER 2160, and then later at ER 2338. It was the defendant's attorney's request to reserve on their Rule 29 motions. And in part, it was because at the close of the government's case, perhaps they didn't want to signal what it is that they thought the government's case was missing. There are strategic reasons that defense attorneys will not raise their Rule 29s in full form. And so the defense attorney himself said, I've done this in another court, can we just reserve and raise this later? And the court asked the government, is there an objection? There being no objection, the court said, okay, you can raise it later. And when did they raise it after the conclusion of the whole case? At the conclusion of the verdict, what the court said at ER 2338 is there's a pending Rule 29 motion. I understand that. And if counsel desire, you can notice any Rule 29 motion that's pending or otherwise or any other post-trial motions such that it may be heard as well on Monday, October 19th. And the issue, I may be just misremembering this, but it seemed to me that the issue that was raised had to do with state of mind. That's correct. At ER 2601 through 46, the motion that the defendants filed, their Rule 29 motion that had been reserved, that the court said you can file at ER 2338 was solely on the intent issue. I see I'm over my time, Your Honor. With that, the United States would submit. Thank you. And Mr. Burstein, you may have some rebuttal time. Thank you, Your Honor. I think what's happened here is this has become a discussion of the WMCA. This has become a discussion of the Wounded Marine Foundation. That's not the inquiry. Fisher doesn't say Medicare is a benefit to the particular defendant organization in Fisher. Fisher says Medicare is a benefit to hospitals that receive Medicare, period. But he tells us to look at the purpose, organization, and structure of the particular entity that is alleged. Of the program, Your Honor. The Fisher language is look at the structure, purpose, and organization of the program, Medicare. So why is it the purpose of this program, the VRE program, to encourage the development of institutions like the ones your client was involved in that will provide reentry and other education to veterans? Because the purpose is to fund veterans. Well, you say that. But that's what they said. Well, I don't care. This is a question of interpreting the statutory purpose. And so my question is, why wouldn't we interpret the statutory purpose here as one that encourages the building of institutions that will provide services to veterans? Well, so if I could just quote the veterans, the United States Appeals Court for the veterans' claims. The purposes of the rehabilitation program, the VRE program, are to provide veterans all services and assistance necessary to enable them, the veterans, to achieve maximum independence in daily living and to maximum extent feasible to become employable and to obtain and maintain suitable employment. That is a purpose. VRE is not set up like Medicare to make sure the community at large has access to hospitals. That's what Fisher is looking at. Is the Medicare program necessary for hospitals? And I would just point the court to Fisher at 673 through 674 of their discussion of what Medicare does. The financial benefits and how it relates to the community at large, to educational processes within the hospital and their ability to purchase other items that are unrelated to actual reimbursement for medical care. None of that is in VRE. Fisher says look at VRE program. It's the federal program. The benefit here is to the service person. That is, my friend says, well, the government didn't get anything in return like an airplane. With all due respect, the government did get something. It got wounded Marines training that many said saved their lives. And just like to say that a four-year degree. Buying the airplane is a direct commercial transaction where the government gets the airplane for itself. They wanted this program to benefit people who had served and had been wounded. Right. And in the Medicare, I just want to be sure I understand Medicare. I don't pay for Part A Medicare. Okay. I'm covered by it.  A hospital would still get money because the government wants it to serve other people in the community. Yes, and that's what I was asking the court to look at at 673 through 674. Allowable costs include amounts which, I'm just quoting, which enhance the organization's capacity to provide ongoing quality services not only to eligible patients but also to the community at large. Does costs have to be assessed in connection with the patient? The next sentence, by way of example, amounts incurred for certain educational programs for interns and residents, known as graduate medical education programs, are allowable costs for which a hospital, a provider, may receive reimbursements. But they're an allowable cost per patient. What I ask you is if there were no, if there's a hospital theoretically that doesn't serve the elderly. Yes, only with people under 35. Under 64. If they didn't have, in other words, the reimbursement is dependent on the patient and they're willing to throw in a kicker. No, Your Honor. Necessary to have interns. Well, we can examine that separately from here. You have exceeded your time and I think we understand your position. Thank you for your time. The case just argued is submitted and we very much appreciate the arguments from both of you in this interesting case. And with that, we stand adjourned for this morning's session.
judges: Graber, Hurwitz, Korman